## Nathaniel Austin *et al.*, Selectmen of Charlestown, *versus* Thomas Murray.

The *St.* 1832, *c.* 150, entitled, " an act in addition to an act authorizing the town of Charlestown to establish a board of health," authorizes the selectmen of Charlestown to appoint and locate the places where the dead may be buried in that town, to establish the police of the burying-grounds, to make regulations for funerals and the interment of the dead, to appoint all necessary officers to carry the same into effect, and to prescribe penalties for the violation of such regulations. The fourth section of a by-law made by the selectmen ordained, that no person should, without leave in writing signed by a majority of the selectmen, bring into the town any dead body, or convey through any of the streets any dead body so brought into the town ; or bury any dead body so brought into the town, on any part of his own premises or elsewhere within the town. It was *held*, tnat the first part of this section of the by-law being unauthorized by the statute and void, (which was conceded,) the whole of the section was consequently void.

*Held* also, that the latter part of the section was not a regulation but a prohibition, and therefore void; and if it were not a prohibition, yet that except when applied to a populous part of the town, it was unreasonable and on that account void.

The third section of the by-law ordains, that no person shall exercise the office of funeral undertaker within the limits of the town, unless he shall have been first appointed and licensed by the selectmen. It was *held*, that this section did not apply to a person who without a license buried dead bodies brought into the town contrary to the fourth section; or if it was intended more effectually to enforce the prohibition in the fourth section and was to be taken in connexion with that section, then it was void.

This was an action against the defendant for causing dead bodies to be brought into the town of Charlestown and conveyed through the streets and for burying such bodies within the town, without leave in writing from the selectmen, and for exercising the office of funeral undertaker within the town, without having been thereto appointed and licensed by the selectmen, contrary to *St.* 1832, *c.* 150, and contrary to the by-laws of the town made in pursuance of that statute.

The case came before this Court by exceptions filed to the determination of the Court of Common Pleas upon a case stated.

By the statute above mentioned, entitled " an act in addition to an act authorizing the town of Charlestown to establish a board of health," it is provided, " that the selectmen of the town of Charlestown be, and they hereby are authorized and empowered, from time to time, to make and establish rules,

orders, and regulations for the interment of the dead in said town, to establish the police of the burying-grounds, appoint and locate the places where the dead may be buried in said town, to make regulations for funerals, and appoint all necessary officers and persons to carry the same into effect, and to prescribe their duties and fees. And the said selectmen may establish such penalties for the violation of any such rules, orders, and regulations, as they may think proper ; provided, that the penalty for any one such violation shall not exceed the sum of fifty dollars ; and provided further, that before any such rule, order, or regulation shall go into effect, the same shall be approved by the inhabitants of said town, at a legal meeting thereof for that purpose called, and shall be published in one or more newspapers printed in Charlestown or Boston. " The statute further provides, that all fines, forfeitures, and sums to be paid, arising under any of the provisions of the act, shall be prosecuted for, by and in the name of the selectmen of Charlestown.

In pursuance of this statute a by-law was made by the selectmen of Charlestown, and subsequently approved and adopted by the town on May 7, 1832, by the 3d section of which it is ordained, that no person shall exercise the office of funeral undertaker within the limits of the town of Charlestown, unless he shall first have been appointed and licensed by the selectmen. The 4th section of the by-law ordains, that no person shall, without leave first obtained in writing, signed by a majority of the selectmen of the said town of Charlestown, bring or cause to be brought into said town any dead body ; or convey, or cause to be conveyed through any of the streets of said town, any dead body so brought into said town ; or keep or bury, or suffer to be kept or buried, on any part of his premises in said town, any dead body so brought into said town ; or place in the earth, or in any tomb, in said town, any dead body so brought into said town ; or cover, or cause to be covered, with earth or other materials in said town, any dead body so brought into said town ; or be in any way aiding or assisting in any of the acts prohibited in this section.

The defendant did the several acts alleged against him

without leave therefor first obtained in writing signed by a majority of the selectmen. He was the undertaker of the Roman Catholic church in Boston, and made the interments at the request and by the direction of Benedict Fenwick, the Roman Catholic Bishop of Boston, to whose church the persons interred belonged. The persons so interred died in Boston. The land in Charlestown where the bodies were buried, was purchased by Bishop Fenwick in January 1830, and was then consecrated as a Catholic burying-ground, and has ever since been used as such for the interment of Catholics dying in Charlestown or Boston. It was approved by the selectmen as a place of burial for persons dying in Charlestown. The persons so interred had not died in consequence of any unusual disease, and at the times of the interments no contagious disease was prevalent in Boston.

After the adoption of the by-law and before the acts complained of were done, the bishop made application to the selectmen to appoint and license suitable persons to be employed as undertakers to inter bodies in the Catholic burying-ground. And on May 19, 1832, which was also before the acts complained of, the bishop made application to the selectmen for permission to inter in the burying-ground in question, the bodies of two children who had died in Boston, and also requested the undertaker of the town of Charlestown to take charge of their burial agreeably to the regulations of the town. To this application the selectmen replied, that "as the object of the town in adopting the rules established was, to prevent the bringing of the dead from the surrounding towns and country into our territory or limits for burial, we feel constrained, from a sense of duty, to decline giving the permission you request. Should you wish for a person, other than one of our undertakers, designated for the purpose of attending the funerals of those of your church who may decease here, we will, with pleasure, approbate such person as you may name." There was a society of Catholics and a Catholic church in Charlestown.

Upon these facts, the Court of Common Pleas were of opinion, that the defendant was not guilty · and to this decison the plaintiffs excepted.

Austin<br>
v.<br>
Murray.

Austin
v.
Murray

Oct. 19th,
1833.

Oct. 18th,
1834.

*Tufts*, for the plaintiffs, cited *Coates* v. *The City of New York*, 7 Cowen, 585 ; *St.* 1792, *c.* 7 ; *St.* 1796, *c.* 47 ; City Ordinances of Boston, 64 ; *St.* 1813, *c.* 143 ; *Nightingale, ex parte*, 11 Pick. 168.

*Hoar*, for the defendant.

Wilde J. delivered the opinion of the Court. The general question in this case is, whether the by-law of the town of Charlestown, so far as it relates to the charges against the defendant, be valid or void.

By the first part of the fourth section of the by-law it is ordained, " that no person shall, without leave first obtained in writing, signed by a majority of the selectmen of the said town of Charlestown, bring or cause to be brought into said town any dead body ; or convey, or cause to be conveyed, through any of the streets of said town, any dead body so brought into said town." That this part of the by-law is unauthorized by the *St.* 1832, *c.* 150, and cannot be sustained, is very clear, and is indeed admitted by the plaintiffs' counsel. There is nothing in the language of the statute, from which it can be inferred, that it was the intention of the legislature to delegate to the selectmen and town of Charlestown the power of imposing upon the citizens of the Commonwealth such an unreasonable restraint ; nor had the legislature any right or authority to delegate any such power.

By the remaining part of the section, all persons are prohibited, without license from the selectmen, from burying any dead body so brought into said town, on any part of their own premises, or elsewhere within the town ; and it is contended, on the part of the plaintiffs, that this part of the ordinance is authorized by the *St.* 1832, *c.* 150, and is valid. By the statute, the selectmen are authorized and empowered from time to time to make and establish rules, orders, and regulati ns for the interment of the dead in said town, to establish the police of the burying-grounds, to make regulations for funerals, and to appoint all necessary officers to carry the same into effect. Is then this part of the by-law a regulation for the interment of the dead ? Or does it amount to a pro hibition ? We think very clearly that it amounts to a prohibition, and was so intended by the selectmen and the town

The whole object of the 4th section appears very clearly to have been, to prevent any dead body from being brought into the town for interment. Indeed the prohibition is express and absolute, excepting the qualification allowing the selectmen to grant license &c., which was never intended to apply to the interment of the dead of the Catholic religion, in respect to which it is manifest the prohibition was meant to be absolute. The refusal of the selectmen to allow any such license on the application of the Catholic Bishop, without assigning any reason whatever, sufficiently shows the intention and the object of the by-law.

But if it were otherwise, and this by-law were to be considered as a regulation and not a prohibition, still we think it unauthorized and illegal.

A by-law, to be valid, must be reasonable ; it must be *legi, fidei, rationi consona.* Now if this regulation or prohibition had been limited to the populous part of the town, and were made in good faith for the purpose of preserving the health of the inhabitants, which may be in some degree exposed to danger by the allowance of interments in the midst of a dense population, it would have been a very reasonable regulation. But it cannot be pretended that this by-law was made for the preservation of the health of the inhabitants. Its restraints extend many miles into the country, to the utmost limits of the town. Now such an unnecessary restraint upon the right of interring the dead, we think essentially unreasonable. If Charlestown may lawfully make such a by-law as this, all the towns adjoining Boston may impose similar restraints, and consequently all those who die in Boston must of necessity be interred within the precincts of the city. That this would be prejudicial to the health of the inhabitants, especially in the hot seasons of the year and when epidemic diseases prevail, seems to be a well established opinion. Interments, therefore, in cities, and large populous towns, ought to be discountenanced, and no obstacle should be permitted to the establishment of cemetries, at suitable places, in the vicinity. The by-law in question is therefore an unreasonable restraint upon many of the citizens of Boston, who are desirous of burying their dead without the city, and for that reason is void.

And this by-law would seem to be void for another reason. A. by-law for the total restraint of one's right, is void ; as if a man be barred of the use of his land. Com. Dig. *Bye-law*, *C* 4. The land where the bodies were interred was the land of the Catholic Bishop of Boston, purchased by him in 1830, and then consecrated as a Catholic burying-ground, and has ever since been used as such, for the interment of Catholics dying in Charlestown and Boston. It is true the by-law does not operate to the total restraint or deprivation of the Bishop's right, but it is a total restraint of the right of burying the dead dying in Boston, for which a part of the burying-ground was appropriated.

The illegality of a by-law is the same, whether it may deprive an individual of the use of a part or of the whole of his property ; no one can be so deprived, unless the public good requires it. And the law will not allow the right of property to be invaded, under the guise of a police regulation for the preservation of health, when it is manifest that such is not the object and purpose of the regulation. Now we think this is manifest from the case stated, in respect to the by-law in question. It is a clear and direct infringement of the right of property, without any compensating advantages, and not a police regulation, made in good faith, for the preservation of health. It interdicts, or in its operation necessarily intercepts, the sacred use to which the Catholic burying-ground was appropriated and consecrated according to the forms of the Catholic religion, and such an interference, we are constrained to say, is wholly unauthorized and most unreasonable.

But there is another principle upon which this by-law is clearly void. A by-law being entire, if it be void in part, shall be void for the whole. The reason is obvious ; for if a part of a by-law might stand good, while another essential part could not be sustained, the object of the by-law might be defeated and injurious consequences might follow against the intention of the framers. Com. Dig. *Bye-law*, *C* 7 ; 2 Ventr. 183 ; *Rex* v. *The Company of Free Fishermen of Faversham*, 8 T. R. 356. The present case affords a strong illustration of the soundness and beneficial effects of this principle. The object of the 4th section was, to prevent any

one from bringing any dead body into town for interment, without license from the selectmen. The prohibition to this effect, is now admitted to be unauthorized ; and if this had been known to the selectmen when the by-law was made, it cannot be supposed that any part of the 4th section would have been admitted. If the dead might be lawfully brought into town, they were not to be left unburied. The intention of the by-law was, to prevent the introduction of dead bodies into the town, and as this intention cannot be lawfully carried into effect, the whole object of the by-law fails.

But it has been argued, that this action may be maintained on the 3d section of the by-law, which ordains, that no person shall exercise the office of funeral undertaker within the limits f the town of Charlestown, unless he shall first have been appointed and licensed by the selectmen. This section seems not to be applicable to the interment of any dead bodies, which is prohibited in the 4th section. Dead bodies brought into town without leave from the selectmen, are not suffered to be buried, whether the person performing the service be licensed as an undertaker or not. If, however, the 3d section was intended more effectually to enforce the prohibition in the 4th section, and both sections are to be taken in connexion as referring to the same general object, then we should hold both void for the reasons already given. This latter construction is much favored by a reference to the correspondence between the selectmen and Bishop Fenwick.

And on the whole, we are of opinion, that this ordinance, so far as it relates to the present action, is void, being an unreasonable infringement on private rights, and wholly unauthorized by the act of the legislature empowering the selectmen of Charlestown to make and establish rules and regulations for the interment of the dead, and consequently that this action cannot be maintained.

*Judgment of the Court of Common Pleas affirmed.*