### Church *versus* The Northern Central Railway.

*Damages for location and construction of railway.—Title of owner, when to be objected to.—Appeal to Supreme Court under Act of April 27th 1855, when proper.*

1. In a proceeding, under the Act 19th February 1849, against a railway company to assess the damages caused by the location and construction of their road, an objection as to the *quantum* of title in the petitioner, or that it was erroneously set forth in the petition, must be made at the time of the application for viewers, or on appeal taken from their report.

2. Under the Act of 27th April 1855, the only remedy for errors not appearing upon the face of the proceedings is by appeal.

3. Where one petitioned for viewers to assess damages done her, as owner of one-third of certain lands, by a railway company, and as administratrix of her daughter, who had died seised of a one-fifth interest therein, and the court, after viewers appointed and report assessing damages made, on exceptions thereto by the company that the petitioner had not title as set forth in the petition, set aside the proceedings at her costs. On *certiorari* it was *held*, That as the *quantum* of title could only appear by evidence *dehors* the record, and as the ground of the decision below, setting aside the proceedings upon such evidence, could not be legally known to a court of error, the judgment must be reversed and the case reinstated, to be proceeded in according to law.

CERTIORARI to the Common Pleas of *Cumberland county.*

This was a proceeding by Juliann Church, in her own right,

(339)

and as administratrix of Mary V. Church, deceased, against The Northern Central Railroad Company, under the 11th section of the Act of February 19th 1849, providing for the assessment of damages occasioned to the owners of lands, by reason of the opening and construction of railroads.

In her petition she set forth: "That before and at the time of committing the acts and trespasses thereinafter mentioned, she was the owner of one-third part and of the estate descended to her, at and on the decease of her daughter Mary V. Church, deceased, of and in the two tracts of land situate in the township of East Pennsborough, in the county aforesaid, a particular description of which is set forth in her petition. That her daughter, Mary V. Church, who died intestate, was in her life, and at the time of committing such trespass, the owner of one-fifth part of the same two tracts of land; and that letters of administration on her estate had issued in due form to the petitioner. That the Northern Central Railway Company, by its superintendent, engineers, agents, and workmen, entered on the same two tracts of land, and surveyed and marked the route of a railway, and constructed the same upon and through the said two tracts of land, whereby great injury, loss, and damage had been done to the petitioner, and to the said Mary V. Church in her lifetime; and that the petitioner, in her own right, and as administratrix aforesaid, could not agree with the said company for the proper compensation for the damage aforesaid done to the petitioner, and to the said Mary V. Church in her lifetime; and therefore prayed the court to appoint viewers," &c.

Thereupon the court appointed viewers, and issued the usual order according to the Act of the 19th February 1849, appointing therein the 22d September 1859, for the meeting of the viewers, on the premises, notice of which was given to the defendant and viewers. The viewers met at the time mentioned, and, without entering on the view, adjourned to the 27th October 1859. On the 27th October 1859, they viewed the premises injured, &c., made their report in favour of the petitioner, and filed it the 14th November 1859. On the 22d of November 1859, the defendant filed twelve exceptions to the report; but as the court only decided or passed upon the 3d, 4th, 6th, and 11th, complaint of its action or decision was made only as to them.

The court considered the 3d, 4th, and 6th together, and the sum of them was that "petitioner had no such title to the premises as set out in her petition; she was not the owner of the one-third part of the land, and that Mary V. Church was not, and had not been in her lifetime, the owner of one-fifth part of the lands described." In the 11th exception the defendant alleged that there was a former recovery of damages for injury to the premises (which were paid) by the guardians of the minor

[Church v. The Northern Central Railway.]

children of Henry R. Church, deceased. The court below, on hearing, set aside the proceedings; whereupon this appeal was taken.

*John Williamson*, for appellant.

*Watts*, for appellees.

The opinion of the court was delivered, May 14th 1863, by

THOMPSON, J.—On the 29th of August 1859, the plaintiff in error petitioned the Court of Common Pleas of Cumberland county, for the appointment of viewers under the provisions of the Act of 19th February 1849, to assess the damages alleged to have been done her by the company, in the location and construction of their road, in her individual right as "owner," as she claims in her petition, of the one-third part of the land described; and also to the estate and property which, in her lifetime, belonged to her daughter Mary V. Church, deceased, and for which she was administratrix, described as being one-fifth of the lands. On the same day the court granted the prayer of the petitioner, appointed viewers, and issued an order for their meeting on the premises on a day named therein. In pursuance of the order, the viewers met, and, after one or more adjournments, assessed damages in favour of the petitioner in the sum of $1000. The report was filed on the 14th November 1859, to which exceptions were filed on the 22d of the same month.

The substance of these exceptions was, that the petitioner had no such title to the premises in her own right, as set forth in her petition; that she was not the "owner" of one-third of the lands described, and that her daughter was not in her lifetime the owner of the one-fifth of the premises described, and that therefore these titles were erroneously set forth in the application for the view to assess damages done thereon. After argument, and on the 20th August 1861, the court being of opinion with the exceptants, set aside the whole proceedings at the costs of the petitioner; whereupon she sued out this *certiorari*.

It is contended by the counsel for the plaintiff in error, that the action of the court below was erroneous, and that the only remedy for errors not appearing on the face of the proceedings, was by appeal under the Act of 27th April 1855, which provides for an appeal in proceedings thereafter instituted under the Act of 19th February 1849, and that the *quantum* of title in the petitioner could only appear by evidence *dehors* the record. It is difficult to see how this can be successfully gainsayed. The Act of Assembly, and the practice under it, requires only that the petitioner set forth that he or she is the owner of the premises alleged to be injured, as was done here. We think that if the

[Church *v.* The Northern Central Railway.]

party against whom the application is made, does not, at the time of the application for the appointment of viewers, object to the *quantum* of interest or title set forth by the petitioner, he is concluded as to that matter, unless there is a special right of inquiry into it given by statute, or he takes an appeal, when the trial being according to the forms of the common law, the whole case will be passed upon *de novo*, and can be fully brought up for review if deemed expedient. When a court acts summarily, and sets aside proceedings on evidence *dehors* the record, the ground of decision cannot be legally known to an appellate court, for no bill of exceptions is allowable in such a case : 7 Harris 363 ; 9 Id. 105. In such circumstances it cannot be known whether the judgment pronounced was sound or otherwise, judicial or arbitrary. The maxim "*omnia presumuntur rite esse acta*" is applicable to the judgments of courts; but it ordinarily applies to matters of form and order, which often are, if not always, the guardian of rights as well as principles. Here there is no presumption of law sufficient in itself to sustain the court in setting aside these proceedings, and no exhibition of evidence of which we can legally take notice, authorizing it. The proceedings including the report being regular on their face, and there being nothing legally impeaching them, it was error to set them aside. The remedy in such a case was, and perhaps is, by appeal.

The plaintiff in error denies that there is anything in the petition, or in any other part of the record, to show that Mrs. Church was only entitled to dower, and not an "owner" of the interest described in the petition ; or that if she had but a life estate, that the damages were not predicated of the exact extent of interest. There is certainly nothing to overthrow this position on the record. Indeed, even if it had appeared that it was only as widow she was claiming, it does not appear in any way that the lands out of which she was claiming dower, her husband had died seised of. If he did not die so seised, then her interest would be realty : 2 Jones 154. So that granting that the estate which she claimed damages for injury to, was dower, still her proceeding may possibly have been strictly right. It doubtless, however, appeared to the court, by admissions or evidence *dehors* the record, that her interest was in some way different from what it was set out to be, but we have nothing of this before us on which to support the decision below.

The proceedings of the court in this case were like arresting a judgment,. where the *narr.* sets forth a good cause of action, on evidence to the court, to show that the facts alleged were not true. To the decision of a court arresting *judgment*, a writ of error lies : 4 Yeates 375 ; 2 S. & R. 392 ; and if arrested in any such way, the action of the court would certainly be reversed.

[Church v. The Northern Central Railway.]

The proceedings set aside being regular, we must, for the reasons given, reverse the order of the Court of Common Pleas setting them aside, so that they may be reinstated and proceeded in according to law. And this is all we decide in this case.

Now, to wit, May 14th 1863, the order of the Court of Common Pleas of Cumberland county, of the 20th August 1861, setting aside the proceedings on the petition of Julian Church, in her own right, and also as administratrix of Mary V. Church, deceased, is now here reversed, and the proceedings ordered to be reinstated in the said court, to be proceeded in according to law, and that the order that the petitioner pay the costs is also reversed.