# Commonwealth *v.* Hanley.

*Practice, Q. S. and C. P. —Insufficient evidence—Remedy below—Binding instructions—Motion in arrest of judgment—Appeal.*

Where the sole complaint is that the evidence was insufficient to sustain the verdict, the remedy of the party in the trial court is by motion for a new trial and not by motion in arrest of judgment. Opportunity for review in the appellate court may be secured by a request for binding instructions and excepting to and assigning for error the refusal so to charge.

If the granting or refusal of the motion in arrest of judgment be the only matter assigned for error, the case will be reviewed on the record proper.

*Police power—Regulation of undertakers—Statutes—Act of 1895—Constitutional law.*

The regulation of the business of undertaking is clearly a legitimate exercise of police power. It is not a mere trade regulation. The Act of June 7, 1895, P. L. 167, does not offend against the constitutional provisions relating to local or special legislation, nor need it fall by reason of any objection to its title. The act of 1895 may well stand and effect the purpose for which it was enacted, even if the 5th section be restricted in its operation to the class of undertakers mentioned or plainly referred to in its title, and it be held void so far as it relates to others.

Argued May 23, 1900. Appeal, No. 237, April T., 1900, by defendant, in suit of Commonwealth of Pennsylvania against Daniel S. Hanley, from judgment of Q. S. Erie Co., Feb. T., 1900, No. 12, on verdict of guilty. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by RICE, P. J.

Indictment charging practicing the business of undertaking unlawfully. Before WALLING, P. J.

It appears from the evidence that defendant, a resident of the city of Erie, took a course of study in anatomy and embalming in Cleveland in the state of Ohio, where he remained for a year or more and where he was actively engaged in the study of his profession both in the college and as assistant to the firm of Hogan & Shearer. After completing his preliminary studies he returned to this commonwealth and asked an opportunity to be examined by the state board of undertakers as provided by the Act of June 7, 1895, P. L. 167. There was evidence on behalf of the commonwealth that under the 2d section of

272 COMMONWEALTH *v.* HANLEY.

Statement of Facts—Opinion of Court below. [15 Pa. Superior Ct.

the act of 1895, the board was empowered to make such regulations for the transaction of the business of the board and management of its affairs as they deemed expedient, and that defendant had failed to comply with one of the rules or regulations adopted for application for a license, in that the applicant did not present with his request for examination, the certificate of two undertakers as to the qualifications and fitness, disclosing the time he had been engaged in the undertaking business and the good moral character of the applicant; which application was required to be signed by the parties making the certificate and sworn to. Defendant filed a certificate not sworn to in accordance with the rules adopted by the board, and did not fully comply with the regulations required by the board. It thereupon refused to examine the appellant who, notwithstanding that he had not obtained the certificate or license to carry on the business of undertaking in the city of Erie, proceeded so to do.

The jury found the defendant guilty on the second count of the indictment. Defendant thereupon moved an arrest of judgment, filing the following reasons therefor:

1. The indictment in said case charges no violation of the laws of the commonwealth of Pennsylvania.

2. That the act under which said indictment was drawn and presented is unconstitutional, null and void.

3. That the verdict of the jury was not justified by the evidence produced.

The court below refused the motion in arrest of judgment, filing the following opinion:

The defendant was tried and convicted on an indictment charging him with a violation of the Act of June 7, 1895, P. L. 167, entitled, "An act to provide for the better protection of life and health by diminishing the danger from infectious and contagious diseases through the creation of a state board of undertakers in the cities of the first, second and third classes, with systematic examinations, registration and licenses for all entering the business of burying the dead, and penalties for violation of the provisions thereof." The defendant moves in arrest of judgment on the ground mainly of the alleged unconstitutionality of said act.

It is urged on behalf of defendant that the business of undertaking is a trade, and that the act in question is a local or special law, in violation of that clause in article 3, section 7 of the constitution of Pennsylvania, which provides that the general assembly shall not pass any local or special law regulating labor, trade, mining or manufacturing. In my opinion, the position is not well taken. After some consideration of the question, I have reached the conclusion that it is a general law, as it applies to all the cities of the first, second and third classes in this commonwealth, and is a proper matter for municipal legislation.

The business of an undertaker may in one sense be a trade, but it is not, in my opinion, a trade in such a sense as to be beyond municipal control. The proper preparation and burial of the dead, in cities, directly affects the public health, and therefore, under all the authorities, is a proper subject for municipal legislation. It would seem to be deplorable if on so important a subject the great cities of this commonwealth can have no regulations, except such as are applicable to sparsely settled rural communities. In remote country districts, where there are but few people, it might not be practicable to obtain a licensed undertaker, and yet, the dead there must be buried. But that would seem to afford no reason why the cities of this commonwealth should not have proper regulations as to the preparation and burial of the dead. The act of assembly in question would seem to come properly within the police power of the legislature, as applicable to the classes of cities mentioned.

I desire to refer to but a few of the many authorities bearing upon this question. In Mr. Sanderson's work on Interpretation of Statutes, page 207, we find this statement: "A law relating to a given cemetery, graveyard, or other public ground not of the state, would be local and special, but laws relating to parks, public squares, cemeteries and graveyards in cities, especially with regard to the exercise of police powers over the latter, would relate to municipal affairs." And also on page 208, of the same work, the rule is stated as follows: "Regulation of labor, trade, mining or manufacturing, which is prohibited, probably was not intended to exclude such local and municipal police regulations by boroughs and cities as may be

authorized by law to be made by them, and which relate to the safety, health and comfort of thickly settled communities."

In the case of Reeves v. Philadelphia Traction Co., 152 Pa. 153, in reference to this section of the constitution, Justice MITCHELL uses the following language: "But under the settled construction of this section, classification of subjects, including cities, is permissible, and legislation which applies alike to all the members of a class is not local or special but general."

The Act of assembly of June 25, 1885, P. L. 187, entitled, "An act regulating the collection of taxes in the several boroughs and townships of this commonwealth" has been held a general law and valid, although it does not apply to any city in the commonwealth: Evans v. Phillipi, 117 Pa. 226.

In delivering the opinion of the court in that case, Justice CLARK on page 237, says: "We hold the act of 1885 to be a general law. It is a general law relating to the collection of taxes in the borough and townships of the state; boroughs and townships are created by general laws, and are the proper subjects of appropriate, independent, general legislation, as such; and the act establishes a general system peculiarly adapted to the convenience and necessities of the municipal divisions named, to wit: all the cities of the first, second and third classes in this commonwealth."

So the Act of June 30, 1885, P. L. 250, authorizing boards of health in cities of the first class to regulate house drainage, registration and licensing of master plumbers and the construction of cesspools, has been held valid: Commonwealth v. Lambrecht et al., 3 Pa. C. C. 323.

We also refer to Weinman v. Passenger Railway Co., 118 Pa. 202, Opening of Ruan Street, 132 Pa. 257, City of Scranton v. Whyte, 148 Pa. 419, Perkins v. Philadelphia, 156 Pa. 554, and Sugar Notch Borough, 192 Pa. 349.

In my opinion, the burial of the dead is as proper matter for municipal regulation as the slaughtering of animals, or the collection of garbage, or any other matter affecting the public health or general welfare of the municipality. Such matters are so peculiarly municipal affairs that city charters usually grant the right to the municipality itself to make rules regulating such subjects. For instance, the Act of May 23, 1889, P. L. 277, providing for the incorporation and government of

271, (1900).]    Opinion of Court below—Arguments.

cities of the third class, gives such cities the corporate power to make regulations to secure the general health of the inhabitants, and to remove and prevent nuisances, and also to make all necessary orders and regulations to prevent the introduction of contagious and pestilential diseases in the city, to enact quarantine laws for that purpose and to enforce the same within five miles of the city limits.

The act in question, in my opinion, is a valuable one, and I see no reason for striking it down.

It is also urged on behalf of the defendant, that the state board of undertakers established pursuant to said act, made unreasonable rules, which have prevented the defendant from obtaining a license as an undertaker. If so, it would seem to me that the defendant's proper remedy would be by a writ of mandamus, directed to said board, and not by attempting to practice without a license. For, even admitting that the state board of undertakers has made improper rules, that would not excuse the defendant for violating the act of assembly. A man charged with selling liquor without a license, could not successfully defend on the ground that the court had erroneously refused his application.

And now, April 16, 1900, the motion in arrest of judgment in above case is overruled.

Defendant appealed.

*Error assigned* was in entering judgment on the verdict and sentencing defendant.

*Jos. P. O'Brien,* for appellant.—The defendant has been adjudged a criminal, (1) because he violated an act of assembly which the constitution of the commonwealth specifically forbade said assembly to enact; and (2) because after endeavoring to comply with said unconstitutional enactment, he was debarred from complying with its provisions by the arbitrary and unwarranted action of the officers chosen to carry out its plain provisions.

As to the constitutionality of the act this court's opinion in Commonwealth v. Zacharias, 3 Pa. Superior Ct. 264, seems to be conclusive.

We desire to call the court's attention to the fact that the

title of the act under which the defendant was indicted does not disclose its contents, thereby violating section 3 of article 3 of the constitution of the commonwealth.

*J. Ross Thompson*, with him *Milton W. Shreve*, district attorney, and *W. P. Brennen*, for appellee.—The act of June 7, 1895 is clearly a police regulation and comes under the police power of the state: Powell v. Com., 114 Pa. 265, 294. It is not class legislation: Weinman v. Railway Co., 118 Pa. 202.

No local results are produced by this act, but the results are general: Ruan St., 132 Pa. 257, 275; Scranton v. Whyte, 148 Pa. 419; Perkins v. Phila., 156 Pa. 554.

All the presumptions are in favor of the validity of statutes, and courts will not be astute in finding objections to them: Sugar Notch Borough, 192 Pa. 349.

The restrictions of the constitution upon legislation apply to direct legislation and not to the incidental operation of statutes constitutional in themselves, upon other subjects than those with which they directly deal.

It seems there is no constitutional objection to the classification of school districts.

OPINION BY RICE, P. J., November 19, 1900

The defendant was indicted and convicted under the 7th section of the Act of June 7, 1895, P. L. 167, which makes it a misdemeanor for any person to practice or hold himself out as practicing the business of undertaking or the care, preparation, disposition and burial of the bodies of deceased persons, without having caused his name, residence and place of business to be registered with the state board of undertakers, as provided in the 5th section of the act, or having obtained license as provided in the 6th section. Before sentence he moved in arrest of judgment upon the grounds, first, that the indictment charged no violation of the laws of the commonwealth; second, that the act under which the indictment was drawn is unconstitutional; third, that the verdict of the jury was not justified by the evidence. The overruling of this motion and the entering of judgment upon the verdict are the only matters assigned for error.

Where the sole complaint is, that the evidence was insuffi-

cient to sustain the verdict, the remedy of the party in the trial court is by motion for a new trial, not by a motion in arrest of judgment. If he deems the evidence adduced by the plaintiff or the commonwealth insufficient in law, even if believed by the jury, to warrant a verdict against him, he may obtain a review in the appellate court by a request for binding instructions and excepting to, and assigning for error, the refusal so to charge. See as to criminal cases, Pauli v. Commonwealth, 89 Pa. 432. But if the granting of the motion in arrest of judgment, or the refusal of the motion, be the only matter assigned for error, the case will be reviewed on the record proper, and not on the sufficiency of the evidence. If authority is needed for these familiar and well-settled rules of practice, it will be found in Skinner v. Robeson, 4 Y. 375, Wilson v. Gray, 8 W. 25, Church v. Northern Central Railway, 45 Pa. 339, Aronson v. C. & P. R. R. Co., 70 Pa. 68, Schubkagel v. Dierstein, 131 Pa. 46, and 1 Br. T. & H. Pr. 769, 770. For this reason, as well as for the reason given by the learned judge of the court below in his opinion overruling the motion in arrest of judgment, we must decline to pass on the validity of the rule established by the state board of undertakers. We remark, however, that the manifest and sole purpose which the legislature had in view in the passage of this law was the preservation of the public health. It was plainly not its intention to give to a favored few a monopoly of the care and burial of the dead for hire. And if the state board refused to perform their duties, or if they established arbitrary and unreasonable rules, whereby the defendant was debarred of the right to apply for a license, and to have his qualifications to conduct the business of an undertaker passed upon, the law gave him a remedy. It is clear, however, that these questions of fact and law could not be determined by the court below in the trial of an indictment against the defendant for carrying on the business without first having obtained a license.

We see no defect in the form or substance of the indictment, therefore, the only remaining question is as to the constitutionality of the act under which it was framed.

Tiedeman, in his treatise on the Limitation of Police Power, p. 200, says of police regulation of skilled trades and learned

professions : "Where the successful prosecution of a calling re-
quires a certain amount of technical knowledge and professional
skill, and the lack of them in the practitioner will result in
material damage to the one who employs him, it is a legitimate
exercise of police power to prohibit any one from engaging in
the calling, who has not previously been examined by the law-
fully constituted authority and received a certificate in testimony
of his qualification to practice the profession." It is upon this
principle, says the learned author, that statutes, which provide
for the examination of those who wish to engage in the practice of
the law, of medicine and surgery and of pharmacy are sustained.
The validity of a law requiring those who wish to engage in
the business or calling of undertaking to submit to such exami-
nation rests upon a broader and more secure foundation than
that above suggested, if it be true, as determined by the legis-
lature, that the proper prosecution of that business requires
"knowledge of sanitation, preservation of the dead, disinfecting
the bodies of deceased persons, the apartment, clothing and
bedding in cases of death from infectious or contagious diseases."
For, lack of skill and knowledge of these things in one who
pursues this calling in large cities may result, not in mere ma-
terial damage to the one who employs him, but in the spread of
contagious and infectious diseases. The regulation of such a
business, by requiring those who engage in it to have that skill
and knowledge, the possession and use of which will result in
diminishing the dangers from such diseases, and the lack of
which may result in the spread of them, is clearly a legitimate
exercise of police power. We do not deem it necessary to dis-
cuss that question further.

But it is contended that it is a local or special law, because it
is confined to those who engage in business in cities of the
first, second and third classes. It is urged that it violates
that provision of the constitution which forbids the legislature
to pass any local or special law regulating trade. But we do
not regard this law as a mere trade regulation. It is true, it
does affect those engaging in a particular occupation and does
not apply to all persons engaging in that occupation. It is
equally plain, however, that the paramount object of the law is
not to discriminate in favor of or against members of the class,
but to protect the public health, and that, whilst it does not

apply to all undertakers, it does apply to all undertakers of the same class. In this respect it is plainly distinguishable from the act construed in Commonwealth v. Zacharias, 3 Pa. Superior Ct. 264. The effect upon the rights of those desiring to engage in this occupation is only incidental. It no more clearly discriminates between different members of the same class of persons than does a law requiring physicians or undertakers in cities to report deaths. Clearly, a law may impose a duty of that kind on such persons, which is not imposed on persons practicing the same profession or pursuing the same vocation in other portions of the state, without being a local or special law within the true intent and meaning of the constitutional provision under consideration.

It seems to us, therefore, that the provision of the constitution by which the validity of the law is to be tested, is that which forbids the legislature to pass any local or special law regulating the " affairs " of cities, and in applying that test the term " affairs " is to be given the broad signification which has been ascribed to it in Morrison v. Bachert and kindred cases. Even in the cases in which the strictest construction of this constitutional provision has been given, it has been conceded that upon some subjects there may be valid legislation for cities as distinguished from boroughs and townships. If it were not so, then, indeed, as was remarked in Wheeler v. Philadelphia, 77 Pa. 338, 350, would the machinery of the state government be so bolted and riveted down by the fundamental law as to be unable to perform its necessary functions. Amongst these subjects is the preservation of the public health. See Ruan Street, 132 Pa. 257, at p. 276. Speaking of a city regulation concerning the burial of the dead, the supreme judicial court of Massachusetts used language which may be quoted here, appropriately: " That this necessary duty shall be performed, especially when undertaken for hire, by suitable and trustworthy persons, and that the moving of dead bodies through the public streets of a city shall be conducted with decency and safety, are obviously matters proper for municipal regulation, and which, as well as the mode of burial, may concern the public health to no slight extent:" Commonwealth v. Goodrich, 95 Mass. 546, citing Austin v. Murray, 33 Mass. 121, and Commonwealth v. Fahey, 59 Mass. 108. Legislation upon that subject that would

be necessary for cities might be wholly unnecessary, if not detrimental, in smaller communities, and we are not convinced that a law honestly intended and well calculated to diminish the dangers from contagious and infectious diseases by regulating the care and burial of the dead, or prescribing the qualifications of those who engage in that vocation, must apply alike to the smallest and most sparsely settled community as well as to the most densely populated city. We do not think this is the doctrine taught in any of the adjudicated cases. The Supreme Court has repeatedly declared that classification as a pretext for special or local legislation will not be sanctioned, and the cases are numerous in which attempts to evade the constitutional restrictions by this kind of special legislation, which of all forms is the most vicious, have been frustrated. On the other hand classification is not absolutely prohibited. "All legislation is necessarily based on a classification of its subjects, and when such classification is fairly made, laws enacted in conformity thereto cannot be properly characterized as either local or special:" Ayars's Appeal, 122 Pa. 266. "It is settled law since Wheeler v. Philadelphia that classification based on genuine and substantial distinctions is within the constitutional power of the legislature and an act which applies to all the members of the class is general and not special:" Sugar Notch Borough, 192 Pa. 349. It is equally well settled, that in cases of this character—that is cases involving the principle of classification—"where no legislative effort to evade the restrictions appears, the courts will look beyond the mere form of the act and examine its true intent and effect in the light of the purpose of the constitutional restrictions:" Commonwealth v. Gilligan, 195 Pa. 504; Clark's Estate, 195 Pa. 520. See also, Commonwealth v. Muir, 1 Pa. Superior Ct. 578, Commonwealth v. Jones, 4 Pa. Superior Ct. 362, Commonwealth v. Clark, 10 Pa. Superior Ct. 507, Commonwealth v. Finn, 11 Pa. Superior Ct. 620, Read v. Clearfield, 12 Pa. Superior Ct. 419, and Commonwealth v. Beatty, ante, p. 5.

After a careful consideration of the question in the light of the principles of interpretation enunciated in the adjudicated cases, we concur with the learned judge of the court below in the conclusion that the act is not in violation of the true spirit and intent of the constitutional provisions relating to local or

271, (1900).]                 Opinion of the Court.

special legislation. This conclusion is so well supported, both by reason and authority, in the opinion filed by him, that further discussion of this feature of the case seems unnecessary.

The title of an act, since the constitutional amendment of 1864, must be regarded as a part of it, however it may have been before: Penna. R. Co. v. Riblet, 66 Pa. 164; Perkins v. Philadelphia, 156 Pa. 554. If the 5th section of this act be construed with reference to and in connection with the title, and the sections which follow, we do not think it can fairly be held that it was intended to apply to other undertakers than those doing business in cities of the first, second and third classes. But even if the words are to be given their broadest meaning and it be held that they apply to all undertakers, it does not necessarily follow that the whole act must be stricken down. Where the title of an act does not fully express its subject, the general rule is that only those provisions of the act not covered by the title are void: McGee's Appeal, 114 Pa. 470; La Plume v. Gardner, 148 Pa. 192. The act of 1895 may well stand and effect the purpose for which it was enacted, even if the 5th section be restricted in its operation to the class of undertakers mentioned, or plainly referred to, in the title, and it be held void so far as it relates to others.

The judgment is affirmed and the record is remitted to the court below to the end that the sentence be carried into effect.