## Commonwealth *v.* Robert Lee Finn, Appellant.

*Qualification of physicians—Police power—Constitutional law—Act of 1893.*

The right to practice medicine and surgery is not a right which belongs to an individual as a citizen of the United States, but to him as a citizen of a state. Therefore the provisions of the Act of May 18, 1893, P. L. 94, do not conflict with that part of the fourteenth amendment to the constitution of the United States which forbids the states to " make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The right of the state to prescribe qualifications, which must be had by all those desiring to practice medicine and surgery, is found in the police power of the state.

The provisions of the 15th section of that act do not conflict with that part of the fourteenth amendment which forbids any state to deprive any person of life, liberty or property, without due process of law, or to deny to any person within its jurisdiction the equal protection of the laws. Nor do they conflict with that clause of section 7 of article 3 of the constitution of Pennsylvania which forbids the passage of a law " granting to any corporation, or association, or individual, any special or exclusive privilege or immunity."

Argued Oct. 2, 1899. Appeal, No. 20, April T., 1900, by defendant, from judgment of Q. S. Erie Co., May Sess., 1897, No. 6, on verdict of guilty. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and BEEBER, JJ. Affirmed. Opinion by BEEBER, J.

Indictment for practicing medicine and surgery unlawfully. Before WALLING, P. J.

It appears from the record that defendant, a resident of Greenfield township, Erie county, Penna., was indicted in May, 1897, for practicing medicine and surgery in Erie county without having complied with the provisions of the act of May 18, 1893, and without having first exhibited to the prothonotary of the court of common pleas of Erie county a license duly granted to him as provided by law. The defendant did not deny having practiced medicine and surgery without a license and without having complied with the act in question, but contended at the trial that the act was unconstitutional and void. Defendant moved to quash the indictment upon the ground that it charged him with no indictable offense, which motion was overruled.

At the trial defendant submitted the following point:

[2. That the act of assembly under which conviction is asked, discriminates between persons engaged in the same profession or occupation, and that defendant therefore should not be convicted. *Answer :* For the present you may render a verdict of guilty in the manner and form as he stands indicted, in each case, and for the present, the points submitted by the defendant are answered in the negative.] [3]

The court charged the jury as follows :

[Gentlemen of the jury : The defendant, Robert Lee Finn, is indicted in two cases under different phrases of the Act of Assembly of May 18, 1893, P. L. 94, for the alleged unlawful practice of medicine.

The commonwealth and the defendant have agreed upon all of the facts. The questions raised are purely legal questions of facts submitted in evidence. I instruct you to render a verdict of guilty in manner and form as the defendant stands indicted, in each case.

I will, however, on motion for a new trial, or in arrest of judgment, consider all these legal questions that are here raised, and pass upon them when I have more time than I have now. For the present you may render a verdict of guilty in the manner and form as he stands indicted, in each case, and for the present the points submitted by the defendant are answered in the negative.] [4]

The court directed a verdict of guilty. Defendant moved in arrest of judgment, which motion was overruled. Defendant appealed.

*Errors assigned* were (1) overruling defendant's motion to quash indictment. (2) In overruling defendant's motion in arrest of judgment. (3) In answer to defendant's second point, reciting point and answer. (4) To the charge of the court, reciting same.

*T. A. Lamb*, with him *A. A. Freeman*, for appellant.—We submit that the act in question is unconstitutional because the 15th section of the act grants to certain classes of persons special privileges or immunities which are denied to others.

All the excepted classes are granted by the act special privileges or immunities which are denied to the profession generally, and this the constitution prohibits.   This was ruled in principle by Clark's Est., 7 Pa. Dist. Rep. 9.

The learned judge below erroneously rested his decision largely on Com. v. Wilson, 6 Pa. Dist. Rep. 628.   It is not a question of what is done under the provisions of the exception, but what may be done.   Or, as is tersely stated by the court in discussing special legislation, in the case of Frost v. Cherry, 122 Pa. 417, " The test is not results, but possibilities."   Under this exception, a physician might have his house but an inch outside of the state of Pennsylvania, and his practice exclusively in Pennsylvania, and yet not violate the law.

If so, he is granted privileges denied the members of the profession generally, and such discrimination cannot be supported.

*Geo. A. Allen,* with him *Paul Benson* and *L. Rosenzweig,* for appellee.—A statute regulating the right to practice medicine, but leaving the field open to all who possess the prescribed qualifications, does not abridge the privileges or immunities of citizens.

Equal protection cannot be said to be denied whenever the law operates alike upon all persons and property similarly situated : Walston v. Nevin, 128 U. S. 578 ; Com. v. Wilson, 6 Pa. Dist. Rep. 628 ; Com. v. Gibson, 7 Pa. Dist. Rep. 386 ; Com. v. Oberg, 14 L. R. Ann. 210, 406, 577 ; Hewitt v. Charier, 33 Mass. 353.

OPINION BY BEEBER, J., November 20, 1899 :

The defendant was convicted of having violated the provisions of the Act of May 18, 1893, P. L. 94, in that he practised medicine and surgery without a license.   His appeal raises the question of the constitutionality of the act.   He contends that the said act is unconstitutional for two reasons, first, because it violates that part of section 1 of the fourteenth amendment of the constitution of the United States, which declares that " no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within

its jurisdiction the equal protection of the laws," and second, because it violates that part of section 7 of article 3 of the constitution of Pennsylvania, which forbids the passage of any act "granting to any corporation, association, or individual, any special or exclusive privilege or immunity." The part of the act which it is contended violates these sections of the two constitutions is found in section 15. This section excludes from the operation of the act "commissioned medical officers serving in the army or navy of the United States, or in the United States Marine Hospital service while so commissioned, or medical examiners of relief departments of railroad companies while so employed, or any one while actually serving as a member of the resident medical staff of any legally incorporated hospital, . . . . or any lawfully qualified physicians and surgeons residing in other states or countries, meeting registered physicians of this State, in consultation, or any physicians or surgeons residing on the border of a neighboring state and duly authorized under the laws thereof to practice medicine and surgery therein, whose practice extends into the limits of this state; provided, that such practitioner shall not open an office, or appoint a place to meet patients or receive calls, within the limits of Pennsylvania, . . . ."

So far as the provisions of this section are supposed to conflict with that part of the fourteenth amendment forbidding the states to "abridge the privileges or immunities of citizens of the United States," it is too clear for discussion that this clause has no application. It was intended to protect the privileges and immunities of citizens of the United States that is, such privileges and immunities as belong to them as citizens of the United States, as distinguished from those that belong to them as citizens of a state. It was not intended as a protection to the citizens of a state against the legislative power of their own state over their privileges and immunities which belong to them as citizens of a state. The right to engage in the business of the practice of law, or of selling liquor, are not rights which belong to a man because he is a citizen of the United States: Slaughter House Cases, 83 U. S. 36; Bradwell v. Illinois, 83 U. S. 130; Giozza v. Tiernan, 148 U. S. 657. So also the right to practice medicine and surgery is not a right which belongs to him as a citizen of the United States, but as a citizen of a state.

The question whether the act, requiring a license to practice medicine and surgery, violates that part of the fourteenth amendment, which declares that a state shall not " deprive any person of life, liberty or property without due process of law " is no longer an open one. The right of the state to prescribe qualifications, which must be had by all those desiring to practice medicine or surgery, is found in the police power of the state. The state has the same right to protect its citizens from the consequences of ignorance and incapacity as it has to protect them from those of deception and fraud. The kind, nature or extent of the qualifications to be required must be left to the judgment of the state as expressed in its statutes. So long as the possession of these qualifications reasonably indicate the ability of one possessing them to practice medicine, or a sufficient knowledge of the science and practice of medicine, they must be held to be valid. It is only when these qualifications have no direct relation to the ability or capacity of the applicant to practice his profession that they will be construed to deprive one of his right to pursue a lawful vocation : Dent v. West Virginia, 129 U. S. 114.

The next question is whether any part of section 15 of the act conflicts with that part of the fourteenth amendment which prohibits a state from denying " to any person within its jurisdiction the equal protection of the laws." It is strenuously argued that because section 15 excludes from the operation of the act medical officers in the service of the army or navy, or of the marine hospital, or medical examiners of relief departments of railroad companies while so employed, or persons actually serving as members of the resident medical staff of a legally incorporated hospital, or any lawfully qualified physicians and surgeons residing in other states or countries, meeting registered physicians of this state in consultation, or physicians or surgeons residing on the border of a neighboring state and duly authorized under the laws thereof to practice medicine and surgery therein, whose practice extends into the limits of this state, provided that they shall not open an office, or appoint a place to meet patients or receive calls within the limits of this state, it denies the defendant the equal protection of the laws. But this is a misconception of what is meant by the phrase " equal protection of the laws." Under the authorities it is clear that

the states have the right to classify their citizens or the property within their limits so that the law may apply to the different classes only. The test is whether the law, as applied to any particular class, operates alike upon all persons or property under like circumstances and in the same situations. As was said by Mr. Justice BRADLEY, in Missouri v. Lewis, 101 U. S. 22, 31, "This clause means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." The rule was also stated by Mr. Justice FIELD in Hayes v. Missouri, 120 U. S. 68, where he said that this amendment " does not prohibit legislation which is limited, either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

The exemption of commissioned medical officers, serving in the army or navy of the United States, or in the marine hospital, from the provisions of the act does not deprive the defendant of the equal protection of the laws as defined by these last two, and many other decisions. Whilst their burdens may not be the same as those of the defendant, neither are their privileges the same. The plain meaning of the language applying to them is that they need not pass an examination by the state's board to secure a license in order to practice their profession within the comparatively narrow limits of their service. There is no language anywhere in the act that authorizes them to enter upon the public practice of medicine,—on the contrary it is very plain that it was intended that they should not. The same limited privileges are given to medical examiners of relief departments of railroad companies and members of the resident staff of legally incorporated hospitals. They can exercise them only while employed or actually serving in their narrow sphere. There is nothing to indicate that they are allowed to practice in a way that competes with the defendant. He may have the public of the entire commonwealth as the sphere of his professional activity, whilst these excepted classes are confined to a much narrower, or more contracted field. So also are very limited privileges given to legally qualified physicians and sur-

geons residing in other states or countries, for they can only meet registered physicians of this state in consultation. The extent of this consultation allowed to them is determined entirely by the registered physicians of this state. The clause exempting physicians and surgeons residing on the border of a neighboring state, whose practice extends into the limits of this state, does not give them equal privileges with the defendant, for the proviso expressly forbids them to open an office or appoint a place to meet patients or receive calls within the limits of Pennsylvania. Moreover, it does not necessarily follow that, because a law of a particular state operates more harshly upon its own citizens than it does upon citizens of other states transacting business within it, it is void as offending the constitution of the United States. As was said by Mr. Justice BRADLEY in Robbins v. Taxing District of Shelby County, 120 U. S. 489, in speaking of a tax levied upon drummers, " To say that the tax, if invalid as against drummers from other states, operates as a discrimination against the drummers of Tennessee, against whom it is conceded to be valid, is no argument; because the state is not bound to tax its own drummers; and if it does so whilst having no power to tax those of other states, it acts of its own free will, and is itself the author of such discrimination." The principle of this case was followed in Rothermel v. Meyerle, 136 Pa. 250, where the Act of April 8, 1861, P. L. 258, requiring the payment of a license fee by certain hawkers or peddlers, was held valid when applied to the citizens of this state, even though it might be invalid when attempted to be applied to citizens of another state.

We are also well satisfied that this act does not conflict with that clause of section 7 of article 3 of the constitution of Pennsylvania, which forbids the passage of a law " granting to any corporation or association, or individual, any special or exclusive privilege or immunity." It does not grant privileges or immunities to any one. As was said by Mr. Chief Justice LORD, in State of Oregon v. Randolph, 23 Oregon, 74; 17 L. R. A. 470, " it only establishes a rule of evidence by which qualification to practice medicine and surgery is to be determined." It operates alike upon all citizens of this state, and they are all permitted to comply with its provisions. So long as the qualifications are such as are described in the former part

620, (1899).]                    Opinion of the Court.

of this opinion, they are valid and constitutional expressions of the state's will and are to be sustained by the courts. The assignments of error are overruled.

Judgment affirmed.