## In re Registration of Campbell, a Physician.

*Physicians—Constitutional law—Police power—Act of May* 18, 1893, *P. L.* 94.

The act of May 18, 1893, relating to the registration of physicians, is a valid and constitutional exercise of the police power of this state upon a subject plainly within that power, and is free from repugnancy to the constitution of the United States or the fourteenth amendment.

*Constitutional law—Physicians—Act of May* 18, 1893—*Constitution of Pennsylvania article* 4, *section* 8; *article* 12, *section* 1; *article* 3, *sections* 3, 7.

The act of May 18, 1893, relating to the registration of physicians, does not contravene article 4, section 8, and article 12, section 1, of the constitution, whereby the appointing power is vested in the governor, nor is it inadequate in title and repugnant to article 3, section 3, nor does it violate article 3, section 7, against any local or special law.

*Record—Registration of physician—Jurisdiction of common pleas—Acts of March* 24, 1877, *P. L.* 42; *June* 8, 1881, *P. L.* 72, *and May* 18, 1893, *P. L.* 94.

The " medical register " of a county in which the names of physicians entitled to practice are registered, is a public record, and if a name is improperly registered in it, the court of common pleas has jurisdiction to strike such name from it.

*Physicians—Registration—Evidence—Res adjudicata.*

In a proceeding to strike off a name from the medical register, placed there by fraud, it is immaterial that the person registered had previously been tried and acquitted in the court of quarter sessions.

Argued Oct. 11, 1900. Appeal, No. 49, Oct T., 1900, by Charles C. Campbell as a physician and surgeon, from order of C. P. Mercer Co., Jan. T., 1900, No. 36, striking off name from medical register, in matter of registration of Charles Cunningham Campbell as a physician. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Petition to strike off name from medical register.

Miller, P. J., found the facts to be as follows:

The medical register of Mercer county, a record kept in the office of the prothonotary, shows on page 10 of said record that the respondent exhibited to the said prothonotary on January 13, 1897, a license purporting to be duly granted to him on March 26, 1896, by the state medical council of Pennsylvania, in accordance with the act of May 18, 1893, being "An act to establish a medical council and three state boards of medical examiners, to define the powers of said medical council and said state board of examiners, to provide for the examination and licensing of practitioners of medicine and surgery, to further regulate the practice of medicine and surgery, and to make appropriation for the medical council."

The affidavit on said record was made, signed and sworn to by the said respondent, and sets forth that he exhibited his license duly granted by the state medical council of Pennsylvania, to the prothonotary, and that the same was genuine, and was duly granted by the said medical council in accordance with the provisions of said act.

On November 9, 1899, Dr. Haymaker, one of the members of the board of medical examiners for the state of Pennsylvania, duly appointed under the provisions of said act, presented his petition to the court setting forth the above facts, and further averring that the said respondent did not receive a license from the medical council of Pennsylvania authorizing him to engage in the practice of medicine and surgery in said state, that he did not on January 13, 1897, or at any other time present to said

prothonotary or to any person representing him as prothonotary, any license whatever that had been duly granted to him, the said respondent, by the medical council of Pennsylvania; and that the said respondent procured the registration of himself upon the said medical register, as above indicated, by means of false and fraudulent representations, and deceptions practiced upon the person entering the registry as aforesaid, and by means of a false oath, made and taken as aforesaid by him, the said respondent.    The prayer of the petition was that the court correct the said record by ordering and directing that the said registry of the said C. C. Campbell be set aside and disannulled.

On November 9, 1899, the court granted a rule to show cause why the record of the medical register, aforesaid, should not be corrected by striking therefrom the name of Charles Cunningham Campbell, the said rule being made returnable to the second Monday of January, 1900.

On January 15, 1900, the said Campbell, the respondent, made answer to said rule, setting forth that he received the degree of doctor of medicine and was duly graduated from the Western University of Pennsylvania, of Pittsburg, Pennsylvania, a legally chartered medical college university, having authority to confer the degree of doctor of medicine, on March 26, 1896, and received his medical diploma from said university on said date; that on January 13, 1897, he presented to the prothonotary of Mercer county, Pennsylvania, being the county in which he resided, his said medical diploma, including any indorsements thereon, and made affidavit before said prothonotary that the diploma and indorsements were genuine, whereupon said prothonotary made such entries upon the medical register of said county as were required by the registration act of June 8, 1881, and deponent was thereupon duly registered as required by said act of assembly.    He further denied that he procured his registration upon the medical register of said county by means of any false or fraudulent representations or deception practiced upon the person entering said registry, or by means of any false oath made or taken by him, but avers and expects to be able to prove that all representations made by him and oaths taken by him were true, and that no deception was practiced.

He further set up that in the case of the Commonwealth v.

C. C. Campbell (being the respondent), tried at No. 9, October term, 1899, in the court of quarter sessions of Mercer county, wherein the question of the right of deponent to practice medicine in Mercer county was at issue, the decision of the jury was in favor of respondent, as will appear by reference to the records of said court, and that the petition presented by the said Haymaker was only made in order to again reopen this question; that the matters involving the same questions were tried in said suit, and were therefore res adjudicata; that the Act of May 18, 1893, P. L. 1894, is unconstitutional, and that even if constitutional it does not require any registration or have any application, whatever, to the registration mentioned in this proceeding.

On the hearing of the rule in open court the uncontradicted evidence showed that the respondent had stated and admitted within the last year that he had applied to the state medical board of Pennsylvania for an examination, for the purpose of obtaining the license provided for by the act of 1893; that he came before the board and took such an examination, but failed to get a license.

On the argument the respondent's counsel set up the following defenses:

1. The court has not jurisdiction for want of sufficient parties.

2. The court has no jurisdiction by reason of the provisions of the Act of May 18, 1893, P. L. 94.

3. The court is without jurisdiction because the proceedings seek to deprive respondent of his property without trial by jury.

4. The matter is res adjudicata.

5. The act of May 18, 1893, is unconstitutional, and even if constitutional respondent is properly registered.

An examination of the case convinces us that all of the above defenses are without merit except the fifth, which sets forth that the respondent is properly registered. This contention is based upon the same theory as that of the respondent's answer, wherein he claims he was duly registered under the act of June 8, 1881. The record in question explicitly shows that the respondent applied for registration under the provisions of the act of May 18, 1893. In the affidavit which the respond-

ent made, signed and was sworn to, he unequivocally stated
that he exhibited to the prothonotary his license duly granted
by the state medical council of Pennsylvania in accordance
with the act of May 18, 1893. About this there can be no
dispute, whatever. The evidence shows that the respondent
by his own admissions had applied to the authority in said
act authorized to grant him a license and failed to obtain
one. The affidavit made by respondent in obtaining his regis-
tration is clearly false. The respondent had no license. He
presented none to the prothonotary. The record is not true.
The registration was made by the prothonotary by means of false
representations made to him by the respondent. The court
being satisfied that the record is false, have we the power to
correct the same and strike therefrom the registration of C. C.
Campbell, the respondent?

In Murphy v. Flood, 2 Grant, 411, LEWIS, J., held: "If an
entry of satisfaction be made upon the record by mistake, by
fraud, or by falsely personating the plaintiff, the court where
the record is has an undoubted right upon proof of the facts,
on notice to the parties, to strike off such improper entry, and
such decision is not subject to review on the writ of error."

In Sweeny v. Delany, 1 Pa. 320, it was held: "The common-
law power of the court was certainly adequate to the amend-
ment of the record by transferring the proceedings to the proper
cause. They had been misplaced by an undiscovered blunder
of the clerk, which if it led no one into a surprise that induced
him to slip his time for the exercises of a right, gives no one a
right to complain of the correction of it. The plaintiff knew
of the blunder during the time, and he had no warrant to think
that the court would not correct the error when discovered, or
suffer him to elude the award for an accident whose conse-
quences it was competent to repair."

In Stephens v. Cowan, 6 Watts, 511, it is held: "If a judg-
ment be rendered by mistake for the plaintiff upon a case
stated for the opinion of the court, it is competent before writ
of error issues, for the court to correct the mistake by entering
judgment for the defendant."

In Brotherline v. Mallory, 8 Watts, 132, HUSTON, J., on
page 135 of the opinion, says: "Every court of record is the
guardian and judge of its own records. It is clothed with full

power to control and inquire into them, and set them right if incorrect."

Numerous citations to the same effect are found in 20 Am. & Eng. Ency. of Law (1st ed.), p. 523.

Being satisfied therefore that the record in question is false, we correct the same by striking therefrom the registration of the respondent, C. C. Campbell.

## ORDER.

And now, February 23, 1900, it is ordered and decreed that the registry of Charles Cunningham Campbell, as a physician and surgeon, as found on page 10, of the medical registry of Mercer county, be set aside and disannulled, and that the name of Charles Cunningham Campbell be stricken therefrom; and that this order be entered upon said page of the medical register under the hand and seal of the prothonotary.

And now, February 23, 1900, to the order of the court making the rule in this case absolute, the respondent excepts, and at his request a bill is sealed.

*Error assigned* was the order of the court.

*J. Norman Martin* and *William C. Pettit*, for appellant.—The court had no jurisdiction for want of sufficient parties: Megargell v. Hazelton Coal Co., 8 W. & S. 342; Cumberland Valley R. R. Co.'s App., 62 Pa. 218; Lockhart v. Power, 2 Watts, 371.

The common pleas had no jurisdiction; the quarter sessions had exclusive jurisdiction of all matters alleged in the petition: McKinney v. Monongahela Nav. Co., 14 Pa. 65; Hellings v. Com., 5 Rawle, 64; Com. v. Evans, 13 S. & R. 425.

The statute declares any violation of the act to be a misdemeanor, and fixes the penalty. Dr. Campbell is entitled to be tried by a jury to determine whether he has violated the provisions of the act. He has been indicted and tried, and the quarter sessions has determined that he has not violated the provisions of the statute. This verdict in effect found his registration and license in proper form: Haviland v. Fidelity Trust, etc., Co., 15 W. N. C. 141; Allgeyer v. Louisiana, 165 U. S. 589; Butchers' Union Co. v. Crescent City Co., 111 U. S. 746; Powell v. Pennsylvania, 127 U. S. 678.

The act of 1893 is unconstitutional.

*Manley O. Brown*, with him *James P. Colter*, for appellee.— The court of common pleas has the sole right to strike off an improper entry on its record, and to make it conform to the facts: Murphy v. Flood, 2 Grant, 411; Sweeny v. Delany, 1 Pa. 320; Balch v. Shaw, 7 Cush. 282.

By the common law every court of record has the right to correct errors in its record where the rights of innocent parties are not prejudiced: Brotherline v. Mallory, 8 Watts, 132.

The exercise of any right which the respondent might obtain to practice his profession must be subject to the police power of the state: Com. v. Finn, 11 Pa. Superior Ct. 620.

The constitutionality of the act of May 18, 1893, has been sustained by clear and forcible opinions in the following cases: Com. v. Wilson, 6 Pa. Dist. Rep. 628; Com. v. Finn, 11 Pa. Superior Ct. 620.

The right of the legislatures to enact laws by virtue of the police power of the state to regulate and prescribe the qualifications of those who practice medicine and surgery has been exercised in a majority of the states, and has been sustained by the Supreme Court of the United States in Dent v. State of West Virginia, 129 U. S. 114, and Com. v. Gibson, 7 Pa. Dist. Rep. 386.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901:

The Act of May 18, 1893, P. L. 94, is a valid and constitutional exercise of the police power of the state upon a subject plainly within that power, and urgently in need of control by it. So far as any federal question is supposed to be involved it is set at rest by Dent v. West Virginia, 129 U. S. 114, in which the Supreme Court of the United States pronounced an almost identical statute of West Virginia to be free from repugnancy to the constitution of the United States or the fourteenth amendment.

In regard to the questions raised under the constitution of Pennsylvania, it would be sufficient to refer to Com. v. Finn, 11 Pa. Superior Ct. 620, but as the objections are presented here in somewhat different form, it may be well to notice them briefly.

It is argued first that the act is in contravention of article 4, section 8, and article 12, section 1 of the constitution, whereby

the appointing power is vested in the governor. But neither section nor any other part of the constitution prohibits the legislature in creating an office from fixing the qualifications of the incumbent, and thereby limiting the choice of the governor in the appointment to the class of persons so qualified. That is all that the act of 1893 does in regard to the offices which it provides for.

Secondly it is urged that the act violates article 3, section 3, at least so far as the provision for registration is concerned, because that subject is not mentioned in the title. But it has been uniformly held from Com. v. Green, 58 Pa. 226, down, that the title to an act need not be an index of its contents. The act of 1893 is entitled, "An act to establish a Medical Council and three State Boards of Medical Examiners, to define the powers and duties of said Medical Council and said State Boards of Medical Examiners, to provide for the examination and licensing of practitioners of medicine and surgery, to further regulate the practice of medicine and surgery, and to make an appropriation for the Medical Council." This is certainly not open to criticism for brevity or vagueness. The purpose of the act is indicated in the phrase "to regulate the practice of medicine and surgery." This gives notice to any one desiring to enter the practice, that its provisions do or may concern him. Nothing more is required.

It is further urged that the act violates the prohibition in article 3, section 7 of the constitution against any local or special law "granting to any corporation, association or individual any special or exclusive privilege or immunity." But the act is not local or special. It embraces the whole state, and applies to all persons of every school or system of medicine desiring to enter on the practice. The designation of the three medical societies from whose members the boards of examiners are to be selected, is not the grant of any special or exclusive privilege to those societies, but a convenient method of securing a competent and qualified class from whom the examiners may be selected. But even if it should be regarded as a special privilege to those societies, it would not be unconstitutional. The board of examiners are state officers charged with the administration of the state's police power on the subject of admission to the practice of medicine. The provisions of ar-

ticle 3, section 7 of the constitution do not apply to such officers. The state may choose its own agents in its own way to carry out its commands in regard to the taxing or police or other general powers: Knisely v. Cotterel, 196 Pa. 614.

Appellant challenges the jurisdiction of the court, and this raises the only serious question in the case, whether the registry of appellant's name was such a record as comes within the summary jurisdiction of the court to amend or strike off. By the Act of March 24, 1877, P. L. 42, all persons desirous of entering on the practice of medicine without a diploma from a chartered medical school authorized to confer the degree of M. D., were required to make affidavit before the prothonotary of the county as to certain facts, and "thereupon the prothonotary shall enter the same of record in a book specially provided therefor, to be kept in his office and open to the inspection of the public."

The Act of June 8, 1881, P. L. 72, sec. 1, required the prothonotary of each county to keep a book "to be known as the medical register of the county" in which the names of practitioners should be entered with particulars as to birth, education, diplomas, etc., "and the prothonotary shall place the copy of such diploma, including the indorsements, on file in his office for inspection by the public." The act of 1893 now under consideration provides for the issue by the Medical Council of the state of a license to practice; and in section 14, prohibits any person from entering the practice after March 1, 1894, unless he has complied with the provisions of the act and exhibited his license to the prothonotary, whereupon "he shall be entitled to be duly registered in the office of the prothonotary," etc. This act as thus appears provides for registration by the prothonotary and by clear implication means entry "of record" in the book required by the prior acts to be kept and known as the medical register of the county. While this register is not a judicial record, yet it is equally clear that it is a public record, put from motives of public policy under the sanction and control of the court. There are many things that have come thus under the control of the court, that were unknown to the common law, and are not parts of the technical record as defined in the older books, as for example, the judgment index or docket, the lien dockets, the ejectment index, the minute books, calen-

dars, trial and argument lists, and other matters incident to the business of the court. And beyond these, which are at least quasi-judicial in their nature, there are others, such as licenses to sell liquor, certificates and other papers relating to public elections, etc., which are not judicial but administrative or executive in their nature but are put under the jurisdiction of the courts. The medical register is of this class. It is a public record of matters of public interest and concern, directed to be kept open and accessible for the information of the public, and the duty of so keeping it is imposed on the prothonotary as an officer of the court. It is an official act enjoined by the law on an officer of the court, and in the performance of his duty he is necessarily subject to the orders and control of the court. If a licensed physician applying for registration should be refused without good reason, it is certain that the court on mandamus or by summary order would compel its officer to perform the duty laid upon him by the statute, and it should be equally clear that if he has through misinformation made an erroneous entry not warranted by law, the court has power to compel its amendment or cancelation. The object of the statute in putting the medical register in charge of the court's officer was at least partly to give it the sanction of the court on which the public could safely rely. It is essential to such sanction that the court should have the same summary power over the register that it has over its strictly judicial records to keep it clear of falsehood intentional or accidental, and to see that it has the verity which the court's sanction imports. The inherent power of the court over its own records for this purpose is unquestionable, and may be exercised summarily on its own motion or on the suggestion of any one as amicus curiæ. The fact, therefore, that the petitioner in the present case had no personal interest in the matter is wholly immaterial.

The proceedings in the quarter sessions were altogether irrelevant. This was not a proceeding to punish the appellant for violation of the act of 1893, but to correct the record of the common pleas by striking off an entry procured by falsehood and fraud. The effect of such cancelation on the appellant is merely collateral and incidental and has nothing to do with his previous trial and acquittal in the quarter session, which may

have been entirely on other grounds.    Even a conviction there would not of itself have canceled the registration in the common pleas, but would at most have been evidence on which that court could correct its own record.

Judgment affirmed