C. H. HANSON, Appellee, v. STATE BOARD OF MEDICAL EXAMIN-
ERS et al., Appellants.

No. 42698.

APRIL 2, 1935.

REHEARING DENIED SEPTEMBER 27, 1935.

Edward L. O'Connor, Attorney General, and Harry Garrett, Assistant Attorney General, for appellants.

Price & Burnquist, for appellee.

ALBERT, J.—The following seems to be the fact situation in this case:

The appellee, Hanson, was a graduate of the University of Iowa, and was admitted to the practice of medicine in 1905. He located at Eagle Grove, Iowa, where he practiced until 1924, when he became addicted to the use of narcotics and was convicted in the United States district court, under the Harrison

Narcotic Act (26 USCA sections 211, 691 et seq.), and sentenced to a year and a day in the federal penitentiary at Leavenworth, Kansas. During the time he was so confined his license was properly revoked by the board of medical examiners, and this revocation was finally sustained by this court in the case of State v. Hanson, 201 Iowa 579, 207 N. W. 769. After serving his time at Leavenworth, he returned to Iowa, and later an injunction proceedings was successfully maintained against him enjoining him from practicing medicine without a license. · Subsequently to the entering of that decree, he was fined for contempt for violation of the same. About four or five years ago the board of medical examiners, with the consent of the district court, gave him a sort of license to practice under one Dr. Watson, of Bode, Iowa. This temporary license was later withdrawn. Since that time he has made frequent applications to the appellants for reinstatement. At one time he took treatments at Mt. Pleasant for the narcotic habit, and later again made application for a license to practice. He was at one time addicted to the excessive use of intoxicating liquors, and took treatments for the same. He says that he took these treatments at Mt. Pleasant on the recommendation of some member of the board of medical examiners, who stated to him that, if he would free himself from these habits, he could be reinstated. He now insists that he has recovered from all these various habits and that he has made application to the board of medical examiners for reinstatement, and on the 11th day of May, 1933, said board took official action and passed a resolution, in which is the following:

"WHEREAS, the duties of the Medical Examining Board are included in the general provisions applying to all of the licensed professions under Title VIII of the Code of 1931, and the only vested powers conferred upon them being in respect to giving examinations to applicants, and

"WHEREAS, the jurisdiction of proceedings to revoke or suspend a license to practice medicine and surgery are in the District Court of the County wherein the licensee resides, and

"WHEREAS, under no statute of law does the State Board of Medical Examiners now have authority to reinstate or relicense any person whose license has been revoked,

"THEREFORE, BE IT RESOLVED BY THE IOWA STATE BOARD OF

MEDICAL EXAMINERS, that this Board considers that we have no jurisdiction in the matter of restoring a license that has been revoked by any court having jurisdiction.''

Following the passage of this resolution by the state board of medical examiners, the present action was instituted, in which it is asked that the appellants be ordered and directed to issue a license to the appellee to practice medicine in the state of Iowa.

 To a fair understanding of the question involved herein, a review of some of the statutes of this state is necessary.

The first act to which our attention is called regulating the practice of medicine in the state of Iowa is chapter 104 of the Acts of the Twenty-first General Assembly, passed in 1886. So far as the question involved is concerned, this act is rather sketchy. Section 7 provides that the board of examiners may refuse to grant a certificate to any person who has been convicted of a felony committed in the practice of his profession or in connection therewith, or may revoke a certificate for like cause or for palpable evidence of incompetency, and such refusal or revocation shall prohibit him from practicing medicine, surgery, or obstetrics, provided that such refusal or revocation of a certificate can be made only with the affirmative vote of at least five physicians of the state board of examiners, etc.

This section stood until the passage of section 2578 of the Code of 1897, which reads as follows:

''The board of medical examiners may refuse to grant a certificate to any person otherwise qualified, who is not of good moral character, and for like cause, or for incompetency, or habitual intoxication, or upon satisfactory evidence by affidavit or otherwise that a certificate had been granted upon false and fraudulent statements as to graduation or length of practice, may revoke a certificate by an affirmative vote of at least five members of the board, which number shall include one or more members of the different schools of medicine represented in said board; nor shall the standing of a legally chartered medical college, from which a diploma may be presented, be questioned, save by a like vote. After the revocation of a certificate, the holder thereof shall not practice medicine, surgery or obstetrics in the state.''

This continued to be the law until chapter 141 of the Acts

of the Thirty-second General Assembly, which amended the law by providing that before any revocation of a license issued by the state board of medical examiners the licensee should have notice and opportunity to be heard, and provided for the procedure under such circumstances. The closing sentence of this act is:

"After the revocation of a certificate the holder thereof shall not practice medicine, surgery or obstetrics in this state, for such times as the state board of health may determine."

A subsequent section provided for appeal to the district court.

Chapter 214 of the Acts of the Thirty-fifth General Assembly, with reference to the previous sections of the Code as to revocation of physicians' licenses, defines unprofessional conduct.

Section 2492 of the Code of 1924 sets out the grounds on which physicians' licenses may be revoked or suspended; and section 2495 of the Code of 1924, and subsequent sections, provide that the district court shall have jurisdiction of all proceedings to revoke or suspend the license, and mark out the procedure thereunder.

Section 2503 of said Code provides, among other things, that the licensee shall not engage in the practice of his profession after his license is revoked or during the time for which it is suspended.

Section 2507 of the same Code gives either party the right of appeal.

It is apparent, therefore, from these statutes, that, while the right to grant licenses to practice medicine was still left with the board of medical examiners, the right to revoke or suspend licenses was taken away from such board, and the jurisdiction therefor was conferred upon the district court of the county in which the physician resided. At the time this license was revoked by the board of medical examiners, the statute provided that said revocation or suspension was to be "for such a time as the board of medical examiners may determine."

A reading of this statute shows that this last clause is coupled with the thought that, if suspension is ordered, it should be for such time as the board of medical examiners may determine. We do not think this clause has to do with the question of a revocation. In other words, we distinguish between a revoca-

tion and a suspension. Such seems to have been the purpose of the statute. In this case the doctor's license was revoked, which revocation was eventually confirmed in this court in the case of State v. Hanson, 201 Iowa 579, 207 N. W. 769. After this action of the board, the aforesaid sections of the statute were passed, transferring the jurisdiction in all revocation cases to the district court. This, in our opinion, deprives the board of its jurisdiction of all matters covered by the revocation statute, and therefore the action of the board in its resolution holding that it had no jurisdiction was correct.

■■■ We are not advised from the record whether the applications made by Hanson were the usual applications which are made by one who has no right to practice medicine. The briefs and arguments seem to indicate that the application made was an application for reinstatement, and, under our holdings, the board would have no right of reinstatement. We are not to be understood by this as holding that Hanson cannot make the usual application to be admitted to practice medicine, and, if he shows the qualifications and passes the usual examination that is required of everyone under chapter 115 of the Code of 1931, that the board has no jurisdiction to entertain said application, or, if the proper showing is not made by the applicant, to deny him a license to practice.

It is suggested that, the board having placed its refusal on the ground of lack of jurisdiction, it is foreclosed to make any other claim as to lack of qualifications; but we do not so view this question. The first question to be determined by the board was whether it had jurisdiction, and, having held that it had no jurisdiction, it had no occasion to go into the merits and qualifications of the applicant. We are of the opinion that the board, on a proper original application, has the duty to pass upon the question of qualifications of the applicant, and, if he now possesses the qualifications required by law, the board would not be warranted in refusing him a license. The trial of the case developed a peculiar situation, in that the appellants stood wholly on the question of the lack of jurisdiction, and the applicant went into the question of proving that he possessed the proper qualifications. The fact that the appellants rested wholly upon the question of jurisdiction and went no further, but appealed on that question, makes the question of the merits of the applicant entirely beside the issue. The lower court considered the merits

of the applicant, and in so doing we think it was mistaken, as the issue made was purely a question of jurisdiction, and nothing else.—Reversed.

ANDERSON, C. J., and DONEGAN, PARSONS, RICHARDS, and POWERS, JJ., concur.