## State Board of Podiatry Examiners v. Lerner

*Irving Warren Singer*, for appellant.
*Norman Ackerman*, for appellee.

KREIDER, P. J., July 5, 1967.—This is an appeal from an adjudication by the State Board of Podiatry Examiners (board) which held that appellant, Sidney J. Lerner, is not authorized to practice chiropody, now known as podiatry, and may not be licensed to practice *without taking the examination* and complying with all other provisions required by the Chiropody Act of March 2, 1956, P. L. 1206, 63 PS §42.3, as amended.[1]

The board, after affording appellant a hearing at which he testified, found as a fact that he was licensed by the Pennsylvania State Board of Medical Education and Licensure on August 27, 1936, to practice chiropody, and was registered annually with the board until the year 1952 but not thereafter. It also found that appellant was not licensed to practice chiropody or podiatry on December 31, 1956, which was the last date under the act that persons theretofore licensed could register and be relicensed without taking an examination. Section 3 of the Act of 1956, as amended, supra, provides (63 PS §42.3):

"Any person who has heretofore been licensed to practice chiropody in this Commonwealth and who is so licensed on the date of the approval of this act and *who desires to continue* the practice of podiatry or chiropody must be *licensed and registered* under the provisions of this act, and, upon making application and payment of a fee of five dollars ($5.00), on or before the thirty-first day of December, one thousand nine hundred fifty-six, such person will be licensed under the provisions of this act *without being required to take the examination* provided by this act". (Italics supplied.)

---

[1] The Chiropody Act of 1956 was reenacted and amended by the Act of August 24, 1963, P. L. 1199, 63 PS §42.1, Pocket Pt., and is now known as the Podiatry Act of 1956.

Section 9 of the Act of 1956 provided for the annual registration of chiropodists (63 PS §42.9) :

"The board shall issue a license to practice chiropody to those qualified under the provisions of this act. All original registrations shall expire on the first day of January next succeeding the issue thereof, and thereafter, each person so registered shall be required to register annually before the first day of January of each succeeding year. The form and method of such registration shall be provided for by the board in a manner enabling it to carry into effect the purposes of this act. Each person who registers shall pay for each annual registration a fee of five dollars ($5), or the amount the department may determine . . ."

Biennial registration, accompanied by a fee of $10, was required by the Act of August 8, 1961 P. L. 982, sec. 1, 63 PS §42.9. It is somewhat difficult to determine the actual purpose of annual or biennial registration, except as a revenue raising measure, since the current application form used in an "Application for Renewal of Registration as Podiatrist", of which we take judicial notice, requires the applicant to do nothing more than insert therein his certificate number, sign his name, note change of name or address, and enclose a check for the registration fee.

In its adjudication of October 21, 1963, the board concluded that "Sidney J. Lerner is not authorized to practice chiropody, now known as podiatry, and may not be licensed to so practice without taking the examination and complying with all other provisions required by the Chiropody Act of 1956 as amended".

The basic question to be decided is whether appellant, having failed to register and secure an automatic renewal of his license before December 31, 1956, is entitled thereafter to register and obtain a license *without having to take the examination* required

under such circumstances by the Act of March 2, 1956, supra.

The board contends that appellant did not qualify for licensure without examination, because he failed to register on or before December 31, 1956. Appellant, on the other hand, claims the board's finding of fact no. 2, viz., "Sidney J. Lerner was not licensed to practice Chiropody or Podiatry on December 31, 1956" is not supported by substantial evidence, because the record shows a license was issued to him on August 27, 1936, by the Commonwealth of Pennsylvania. Appellant concedes he was not "registered" to practice in Pennsylvania subsequent to 1952, but contends that registration is merely a ministerial function "which in no way affects the appellant's license nor in any way does it affect his suitability for practice". He points to the Act of May 20, 1937, P.L. 727, sec. 1, 71 PS §1026, which provides that:

"Whenever under any act of Assembly the right to practice any profession or work at any trade or occupation is conditioned upon the annual renewal of any license or registration granted by the Department of Public Instruction,[2] for which renewals a fee is prescribed and required to be paid, the department shall, *before issuing any such renewal license* or certificate of registration, collect from the person licensed or registered, in addition to the fee for the current year, *the full amount of all fees and penalties for preceding years* which the applicant for renewal has theretofore failed to pay: Provided, That if in any case the applicant proves to the satisfaction of the department that he actually has not practiced such profession or worked at such trade or occupation at any time during any

---

[2] Registration and applications for license are now filed in the Department of State: Act of August 24, 1963, P. L. 1199, sec. 2, Definitions: 63 PS §42.2, Pocket Pt.

such preceding year or years, then the fee for such year or years shall not be collected". (Italics supplied.)

Appellant argues that the legislature intended to distinguish between licensing and registration and that, even though he did not register after the year 1952, he is entitled to obtain a renewal of his license, without an examination, if he pays the full amount of all fees and penalties which have accrued.

This case is apparently one of first impression in Pennsylvania. Appellant has cited no authority in support of his above-stated position, while the board relies on the well-established principle that the legislature has the power to regulate professions, trade and business within the proper exercise of its police power. On this point, it cites, inter alia, the celebrated case of Dent v. West Virginia, 129 U. S. 114 (1889),[3] and various Pennsylvania cases involving attempts to register by applicants for a professional license after the last day for doing so had expired. *In none of them, however, did the applicant possess a license previously issued to him* by the Commonwealth of Pennsylvania.

In Dent v. West Virginia, supra, the defendant-physician was practicing medicine *without a license* before and after the legislature of West Virginia passed an act requiring persons holding themselves out as doctors of medicine to obtain a license to practice unless they had been practicing medicine in the State continuously for the period of 10 years prior to March 8, 1881, or could furnish a diploma from a recognized school of medicine, or could show that they had

---

[3] See also Semler v. Oregon St. Bd. of Dental Examiners, 294 U. S. 608 (1935), prohibiting illegal advertising, and N. A. A. C. P. v. Button, 371 U. S. 415, 456 (1963), which involved the alleged solicitation of legal business. It is interesting to note that members of the legal profession are not required to reregister and pay an annual fee as a condition precedent to their right to continue to practice law.

been found upon examination by the State Board of Health to be qualified to practice medicine in all its departments. Dent was unable to meet these requirements. He had been practicing only five years in West Virginia and his diploma from the American Eclectic College of Cincinnati, Ohio, was not accepted because the board claimed the college was not "reputable", as defined by the board. His conviction for violating the act was sustained by the Supreme Court of the United States, which held that the State had acted within the scope of its police power in prohibiting Dent from continuing in the practice of medicine until he met the requirements of the statute.

The board also cites Commonwealth v. Densten, 217 Pa. 423 (1907); In re Registration of Campbell, 197 Pa. 581 (1901), and Application of Wadel, 25 Pa. C.C. 60 (1901), for the proposition that registration may lawfully be required of one who seeks a license to practice a profession. This, of course, is a valid and constitutional exercise of the police power of the State.

In Campbell, the court struck the applicant's name from the medical register in the prothonotary's office because the registration was based upon a false representation by the respondent that he had a license. In Densten and Wadel, the applicants, who were *unlicensed* but otherwise qualified by years of experience, did not attempt to exercise their right to register under a "Grandfather Clause" in the statute, until long after the last day for doing so had expired.[4]

In the instant case, as heretofore stated, Lerner was duly licensed by the Commonwealth in 1936, 27 years before these proceedings began, and was never cited by the board for violation of any law or regulation. To

---

[4] For a comprehensive note on "Grandfather Clauses", see 4 A. L. R. 2d, Ann., p. 670.

require him to take another examination after more than a quarter of a century has elapsed would impose a hardship upon him and many other professional licensees which we do not believe the legislature intended.

In 70 C. J. S., Physicians and Surgeons, §16, p. 873, it is stated:

"LICENSES SUBJECT TO REVOCATION. An annual license cannot be revoked after it has expired by its own limitation; but the failure of a licensee to renew his license for the current year does not preclude proceedings to revoke the license on the ground that the question is moot, since failure to renew does not lessen the value of the license except for the lapsed period before renewal . . ." citing State v. Otterholt, 234 Iowa 1286, 15 N.W. 2d 529, (1944). The Otterholt case is also cited in 24 Words and Phrases, Lapsed License, page 362, for the principle that "A 'lapsed license' to practice chiropractic for failure to renew such license annually is distinguished from a 'revoked license', in that in first instance holder is entitled to a renewal or reinstatement as a matter of right, while one who has had his license revoked must commence anew by making an original application for a license".

Our conclusion that appellant is entitled to be registered and licensed without examination upon payment of all accrued fees and penalties is confirmed by the decision of the Supreme Court of Iowa in State v. Otterholt, 234 Iowa 1286, 15 N.W. 2d 529 (1944), supra. In that case, the State instituted a proceeding to revoke a chiropractor's license, alleging that he was guilty of willful and repeated violations of the Iowa Code relating to the practice of chiropractic and other professions. Defendant, in an apparent effort to avoid the stigma of revocation, filed a motion to dismiss, averring that his license to practice chiropractic had expired on July 1, 1943, and had never been renewed,

and the State's cause of action against him having been begun for the cancellation of his license certificate, "there is nothing left upon which the same can operate, and the question of cancellation of such certificate is at this time but a moot question". The lower court's decision sustaining defendant's motion to dismiss on the ground that the cause of action had ceased to exist was reversed by the Supreme Court of Iowa which, in a noteworthy opinion, stated:

"Through the license to practice granted appellee by the state, subject to the regulations referred to above, appellee is the possessor of a valuable privilege: State v. Edmunds, supra [127 Iowa 333, 101 N.W. 43]. This is a privilege or right, 'which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal.' Gilchrist v. Bierring, Iowa, 14 N.W. 2d 724, 732, decided by this court June 6, 1944. That case further holds that 'the state cannot, by issuing only annual licenses, ingeniously thwart these precious rights.' Quoting Craven v. Bierring, supra [222 Iowa 613, 269 N.W. 801], the opinion also states, *once an annual license is issued* to a dentist "unless he has violated some of the provisions of the statute applicable to his profession, *he is entitled to a renewal of his license as a matter of right*" '.

"Our above holding in the Gilchrist case bears upon the issues in the present case which the court in its ruling indicated were decisive. The motion to dismiss was sustained upon the ground that the cause of action had ceased to exist. With this we do not agree. There is a *marked difference* between a *license* to practice a profession and a *mere renewal* of that license. This is expressed in the Gilchrist case: 'This is because a dentist, doctor, lawyer or the member of any other profession, does not devote the years of study and preparation necessary to qualify as a practitioner

merely that he may be accorded the right to practice *for one year. When he qualifies for the practice, he does so for life.* That right cannot be taken from him except by due process of law.' The certificate entitling appellee to practice is a finding by the duly constituted authority that he has the necessary character and qualifications to practice his profession. *The mere failure to renew annually does not lessen the value of that license,* except for the lapsed period before the renewal. Appellee is still the owner of the license and may be reinstated and continue the practice of his profession *without examination,* subject, as always, to the supervisory power under which he previously exercised it, such right to practice being evidenced by its renewal. Section 2448, Code of 1939. All benefits of his license did not expire on July 1, 1943. Section 2447, Code of 1939. His rights under the original license are of value. To deprive him absolutely and finally of the right ever to practice is much more serious than a mere suspension of that right, either voluntary or compulsory. Contrary to the procedure in renewal, in which one who is not an offender against the rules regulating the practice is entitled to a renewal as a matter of right, one who has had his license revoked must commence anew by making an original application for a license. Hanson v. State Bd. of Medcal Examiners, 220 Iowa 357, 260 N.W. 68; Craven v. Bierring, supra". (Italics supplied.)

State v. Otterholt, supra, is cited with approval by the Court of Appeals of Georgia in Leakey v. Georgia Real Estate Commission, 80 Ga. App. 272, 55 S.E. 2d 818 (1949).

For the foregoing reasons, we are of the opinion that this appeal should be sustained.

## ORDER

And now, July 5, 1967, the appeal of Sidney J. Lerner is sustained and the State Board of Podiatry

is directed to accept his application for registration and, without examination, issue to him a license to practice podiatry, upon payment of all accrued fees and penalties.

### DISSENTING AND CONCURRING OPINION

BOWMAN, J.—I must dissent from what I consider to be the ultimate impact of the majority opinion.

If I correctly understand it, the majority opinion, relying upon the opinion of the Iowa Supreme Court in Otterholt, holds that an individual having once been issued a license to practice a profession thereby acquires an absolute right for life to have it reissued or renewed, subject only to its revocation or suspension for good cause shown and by procedural due process.

As a matter of constitutional law, I do not conceive that an individual, once issued a license, has such an absolute property right therein within the protection of our State or Federal Constitutions so as to wholly preclude the State from a reasonable exercise of its police power in the area of renewal or reissuance of licenses. Yet such is the import of the majority opinion.

It is unquestionably established, as the majority opinion recognizes, that the State in the exercise of its police power may regulate, i.e., may require licensure after proof of competency, of individuals desiring to engage in a profession affected with a public interest. In the first instance, therefore, an individual's right to practice any such profession is not an absolute right, but must yield to the power of the State in the interests of its citizens in requiring proof of competency.

Proof of competency is usually legislatively prescribed by requirements of prior experience (the orig-

inal purpose of the so-called "grandfather" provisions found in many statutes) or by educational qualifications, with formal examination frequently required where educational qualifications are prescribed. So long as such requirements are found to relate reasonably to proof of competency and to meet uniform standards, they have been sustained as a proper exercise of the police power and a limitation upon an individual's property right to pursue an otherwise lawful calling.

It would hardly seem debatable to me that as much knowledge and expertise in a profession is gained from its practice after licensure, and particularly from its continuity of practice, as is acquired by formal education and demonstrated by successful passage of an examination. It would appear to be equally clear, however, that no matter how competent and able an individual might have been upon original licensure, his nonpractice for some period of time, particularly in this day of rapid changes and advancements in the body of knowledge in our professions, might soon replace competency with incompetency to the detriment of the public; and this by a person—if he has an absolute right to renewal or reissuance of a license once granted, no matter how many years ago —whom the State represents as being competent.

I recognize, of course, the complexities and problems with which we would be confronted in terms of reasonableness and fairness if the State chose to exercise its police power in this area. This is not to say, however, that the State is constitutionally proscribed from acting simply because at one time an individual was issued a license. The majority opinion seems to conclude that the sole remedy to the State to deny an incompetent licensee the right to practice is upon an affirmative showing by the State of such incompetency after

citation and hearing. This too narrowly limits the State, in my opinion, in its exercise of the police power. For these reasons, I dissent from such a far-reaching conclusion as to the interrelation of an individual's constitutional right to pursue a lawful calling and the State's police power in relation thereto.

Otherwise, I fully concur with the majority opinion and its order. The reason assigned by the board and the statutory authority cited to support its action bear no reasonable relation to a proper exercise of the police power in denying an individual licensed to practice a profession the right to continue such practice. Within the context of the "Grandfather Clause" here in question and the biennial registration requirements of the Chiropody Act of 1956, as amended, no discernible relationship to an exercise of the police power in ascertaining competency of one already licensed can be found. Therefore, they afford no authority for the board's action.